UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

**CIVIL ACTION NO: 1:05CV-101-M**

**LYLE G. MYERS**                                                              **PLAINTIFF**

**V.**

**OTR MEDIA, INC., et al.**                                         **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a motion for summary judgment by Plaintiff, Lyle G. Myers [DN 12]. Also before the Court is a motion to compel arbitration and a cross-motion for summary judgment by Defendants, OTR Media Inc., et. al. [DN 20]. Fully briefed, these matters stand ripe for decision. For the reasons set forth below, both motions are **DENIED.**

**I. STANDARD OF REVIEW**

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories, and affidavits, establish that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 586 (1986). The Rule requires the non-moving party to present "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e) (emphasis added). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252. It is against this standard that the Court reviews the following facts.

**II. BACKGROUND**

This case arises out of the sale of securities by Defendants, OTR Media, Inc. (OTR); Richard Underwood (Underwood), Chairperson of OTR; and Carl Flewallen (Flewallen), Senior Accounts Manager of OTR to Plaintiff, Lyle G. Myers (Myers), a Michigan resident. Myers contends that the sale was fraudulent for a number of reasons.

Myers is a seventy-nine year-old man who became a millionaire after discovering a type of grease that works particularly well with conveyor systems. Myers' fortune allowed him to become a regular investor in oil and gas ventures in the Bowling Green, Kentucky area. OTR was in the outdoor advertising business but it has since ceased operations. It was a mobile billboard company that sold advertising space on semi-trailers. From the parties' account of the facts, it is clear that Myers' was targeted as a potential investor in OTR

because of his fortune. That is about the only thing that is clear, however, as the parties' accounts of the events are wildly divergent.

According to the Plaintiff, he received a brochure for the OTR stock offering, identified by the parties as the "Executive Summary," in the fall of 2002. Soon after, he was contacted by Flewallen, whom he claims he had never met prior to that point, regarding the stock offering. Flewallen allegedly told Myers that he would recoup any investment within the first year. He also appealed to Myers' humanitarian side by telling him that OTR helps kids by placing information concerning missing children on the side of semi-trailers.

Based on these representations and OTR's aggressive sales techniques, which Myers claims included constant telephone calls and even personal visits, Myers made three investments in OTR: one for $5,000 on or about January 2, 2003, one for $295,000 on or about January 31, 2003, and one for $186,000 on or about July 4, 2003. Plaintiff claims that Flewallen received a commission for these sales. The only signed contract to which Myers entered was a Subscription Agreement. Although OTR claims that it sent Myers a Private Placement Memorandum (PPM) for informational purposes prior to the sale, Myers testified that he never received such a document. Meanwhile, the Kentucky Department of Financial Institutions, Division of Securities (Kentucky Securities Division) was investigating OTR and Underwood based on complaints that Underwood was selling unregistered securities using unregistered agents. On May 12, 2003, the Kentucky Securities Division issued a Cease and Desist Order in which they found that Underwood and OTR violated Kentucky law by selling unregistered securities using unregistered agents. Defendants never informed

Myers of the Cease and Desist Order.

The Plaintiff's statement of facts is bolstered by an affidavit from Flewallen. In his affidavit, Flewallen testified that he was employed as a Senior Accounts Representative at OTR. Flewallen stated that OTR used general solicitation and advertising tactics in an effort to sell securities and that OTR sold securities to more than 35 unaccredited investors. He further testified that cash bonuses were paid to OTR salespeople, including himself, when securities were sold.

Defendants take issue with a number of the facts set forth in Plaintiffs' brief, especially with Flewallen's testimony. Defendant Underwood submitted a supplemental affidavit which contradicted most of Flewallen's testimony. For instance, Underwood testified that Flewallen was never paid a commission to sell OTR securities and that OTR employed salespeople who were registered and whose sole function was to sell OTR securities. Underwood also asserted that Myers and Flewallen had a previous business relationship prior to the events at issue in this lawsuit and that Flewallen referred Myers to him based on that relationship. According to Underwood, neither OTR nor any of its agents ever used any form of general solicitation or advertising to sell their securities. Additionally, Underwood testified that OTR's private placement offering was limited to no more than 35 unaccredited investors and that the stock was in fact not sold to more than 35 unaccredited investors through the common stock private placement offering.

Defendants also contend that the "rigs for kids" program was conceived only after Myers purchased OTR stock and that Myers final purchase of OTR stock was on April 11,

2003, rather than July 4, 2003, which was prior to the time when Kentucky issued a Cease and Desist Order. Moreover, Defendants assert that they never made a promise to Myers related to future financial performance of OTR stock and that Myers expressly acknowledged receipt of the PPM by signing the Subscription Agreement. The PPM, which OTR claims Myers received based on its records, conspicuously advised all prospective OTR investors that OTR stock was not registered with the SEC in reliance upon exemptions under Section 506 of Regulation D of the Securities Act of 1933 (Securities Act). To ensure only statutorily qualified investors purchased stock, OTR required all prospective purchasers to complete questionnaires. Based on Myers' responses to the questionnaire, OTR adjudged him to be a qualified investor.

In light of the stock sale, which Myers views as fraudulent, he brings three statutory state law claims and three common law claims against the Defendants. In Count I, Myers alleges a violation of MCL 451.701, MCL 451.810, KRS 292.480, and KRS 292.340 based on the fact that the securities OTR sold to Myers were neither registered in Michigan nor were the securities registered in Kentucky. In Count II, Myers alleges a violation of MCL 451.601, MCL 451.810, KRS 292.330, and KRS 292.480 based on the fact that the Defendants, despite not being registered as agents, transacted business in Michigan and Kentucky. In Count III, Myers alleges a violation of MCL 451.810(a)(2), MCL 451.810(b), and KRS 292.320 based on untrue statements and omissions allegedly made by OTR.

Myers also brings three claims under state common law. In Count IV of his Complaint, Myers asserts a claim for common law fraud based on OTR's misrepresentations

and omissions in the sale of its securities. In Count V of his Complaint, Myers alleges silent fraud as Defendants owed a duty to Myers, which he claims they failed to fulfill, to disclose material facts concerning the true risks associated with the securities. In Count VI of the Complaint, Myers alleges innocent misrepresentation based on Defendants' sale of the securities. For his damages, Myers seeks against all Defendants a return of his investment for the full amount of $486,000, plus statutory interest, or in the alternative, for the remedy of restitution, rescission and/or rescissionary damages. Additionally, Myers seeks the cost of actual attorney fees against all Defendants, exemplary damages, and any other relief the Court finds just and proper.

### III. DISCUSSION

As their basis for summary judgment, Plaintiff contends that Flewallen and Underwood were unregistered agents selling unregistered securities. The Defendants do not dispute that they were selling unregistered securities. Their position is that the securities they sold were not required to be registered under "The National Securities Market Improvement Act of 1996" (NSMIA), which preempts state law. Defendant Underwood also contends that neither he nor Flewallen fall under the statutory definition of "agent." In their motion, Defendants seek to compel arbitration and thus have filed a cross-motion for summary judgment on the basis of an arbitration clause contained within the Subscription Agreement. Before turning to the substantive issues of securities law raised by the parties, the Court must consider the threshold issue of the applicability of the arbitration clause.

### A. Arbitration Clause

The Defendants argue that any dispute arising out of the purchase of OTR securities is governed by an arbitration clause in the PPM, which OTR claims to have provided to the Plaintiff several months before he purchased OTR stock. The Plaintiff claims that he never received the PPM and also contends that the Defendants did not successfully incorporate the terms of the PPM.

The arbitration clause reads,

> Any dispute arising out of or relating to an investment in the Securities of the Company must be handled in accordance with the rules and regulations of the American Arbitration Association; said arbitration to be binding on the parties. Additionally, each party hereunder will be waiving the right to seeks punitive damages, the right to a trial by jury and other potential remedies that otherwise may be afforded by law.

The Subscription Agreement in turn states in pertinent part:

> I have received a copy of the Private Placement Memorandum including all of its exhibits dated June 1, 2002, and all of the exhibits thereto, have reviewed it carefully, and have relied solely upon it and investigations made by me or my representative in making my decision to invest.

When deciding whether the parties agreed to arbitrate a certain matter, courts generally apply ordinary state-law principles that govern contract formation.[1] First Options v. Kaplan, 514 U.S. 938, 944 (1995). "No contract to arbitrate can arise except upon the expressed mutual assent of the parties. A party cannot be required to arbitrate an issue he has not agreed to submit to arbitration." Horn v. Cook, 325 N.W.2d 558, 560 (Mich. Ct. App.

---

[1] Here, both parties cited Michigan law. Although the case was transferred to the Western District of Kentucky, the choice of forum clause said nothing about a choice of law. Therefore, the Court decides this issue under Michigan law, as argued by the parties.

1992). "A reference by contracting parties to an extraneous writing for a particular purpose makes it a part of their agreement only for the purpose so specified." Christman Co. v. Anthony S. Brown Dev. Co., 533 N.W.2d 838, 839 (Mich. Ct. App. 1995). Courts typically regard PPMs as informational disclosure statements. See e.g., Berr v. FDIC, (In re Berr), 172 B.R. 299, 302-03 (9th Cir. BAP 1994) (referring to a PPM as an investor's disclosure statement); Hirata Corp. v. J.B. Oxford & Co., 193 F.R.D. 589, 593 (S.D. IN 2000) (referring to a PPM as a disclosure statement). The incorporating instrument must clearly evidence an intent that the separate writing be made a part of the contract. Forge v. Smith, 458 Mich. 198, 208; 580 N.W.2d 876 (1998).

Here, the PPM was not successfully incorporated as part of the Subscription Agreement as the Subscription Agreement did not clearly evidence an intent that the PPM be made a part of the contract. Moreover, Myers claims that he never even received the PPM. Thus, Defendants' motion to compel arbitration and cross-motion for summary judgment is **DENIED.**

### B. Selling Unregistered Securities

Having denied the Defendants' motion to compel arbitration and cross-motion for summary judgment, the Court now turns to the substantive issues raised by the Plaintiff in his motion for summary judgment. In Count I of his Complaint, Myers alleges that the Defendants violated Kentucky and Michigan securities laws by selling unregistered securities. Defendants do not dispute that the securities at issue were unregistered but rather argue that the securities were covered by NSMIA and, therefore, were exempt from any state

law registration requirements.

"The primary purpose of NSMIA was to preempt state "Blue Sky" laws which required issuers to register many securities with state authorities prior to marketing in the state. By 1996, Congress recognized the redundancy and inefficiencies inherent in such a system and passed NSMIA to preclude states from requiring issuers to register or qualify certain securities with state authorities." Lander v. Hartford Life & Annuity Ins. Co., 251 F.3d 101, 108 (2d. Cir. 2001). The NSMIA "seeks to further advance the development of national securities markets and eliminate the costs and burdens of duplicative and unnecessary regulation by, as a general rule, designating the Federal government as the exclusive regulator of national offering of securities." Zuri-Invest AG v. Natwest Fin. Inc., 177 F. Supp. 2d 189, 192 (S.D.N.Y. 2001). Thus, under NSMIA, there are certain instances in which the registering of securities is unnecessary. One such instance is when a security qualifies as a "covered security." 15 U.S.C. § 77r(a)(1)(A). A "covered security" is defined as, among other things, a security involved in a "transaction that is exempt from registration...pursuant to...[SEC] rules or regulations issued under [§ 4(2) of the Securities Act]." 15 U.S.C. § 77r(b)(4)(D). Section 4(2) of the Securities Act outlines which transactions are "exempt" from federal registration requirements.

At issue in this case is SEC Regulation D, which includes Rule 506, issued under §4(2). Rule 506 states as follows:

> (a) Exemption. Offers and sales of securities by an issuer that satisfy the conditions in paragraph (b) of this section shall be deemed to be transactions not involving any public offering within the meaning of section 4(2) of the

>Act.
>(b) Conditions to be met -- (1) General conditions. To qualify for an exemption under this section, offers and sales must satisfy all the terms and conditions of §§ 230.501 and 230.502.
>(2) Specific Conditions -- (I) Limitation on number of purchasers. There are no more than or the issuer reasonably believes that there are no more than 35 purchasers of securities from the issuer in any offering under this section....
>(ii) Nature of purchasers. Each purchaser who is not an accredited investor either alone or with his purchaser representative(s) has such knowledge and experience in financial and business matters that he is capable of evaluating the merits and risks of the prospective investment, or the issuer reasonably believes immediately prior to making any sale that such purchaser comes within this description.

Here, Defendants have proffered evidence sufficient to create a question of fact as to whether they are exempt under Rule 506, which incorporates Rule 501 and Rule 502. While Flewallen contends that OTR used general solicitation and advertising tactics and sold to more than 35 unaccredited investors, Underwood testified that OTR securities were never offered for sale to the general public and that no more than 35 of OTR's limited number of investors were unaccredited. Moreover, Underwood cites the purchaser questionnaire and OTR's reasonable care in ensuring that purchasers were not statutory underwriters as evidence of compliance. Thus, Plaintiff's motion for summary judgment as to Count I is **DENIED**.[2]

### C. Failure to Register as Agents

In Count II of his Complaint, Myers alleges that the Defendants violated Kentucky

---

[2] Based on our holding above, the Court need not express a view as to the propriety of the holding in Temple v. Gorman, 201 F. Supp. 2d 1238, 1244 (S.D. Fla. 2002) that "[r]egardless of whether the private placement actually complied with the substantive requirements of Rule 506 of Regulation D, the securities sold to Plaintiffs are federal covered securities because they were sold pursuant to those rules." See also Lillard v. Stockton, 267 F.Supp. 2d 1081, 1116 (N.D. Okla. 2003).

and Michigan law due to their failure to register as a broker-dealer or agent. Defendants further argue that summary judgment is also appropriate based solely on Flewallen's receipt of commissions in return for soliciting the public and selling OTR stock. Underwood contends that he and Flewallen do not meet the statutory definition of the term "agent."

In pertinent part, MCL 451.801(c) provides that an "agent" does not include any individual who represents an issuer in...affecting transactions in a covered security as defined in section 18(b)(3) or 18(b)(4)(d) of the securities act of 1933, 15 U.S.C. 77r...if...no commission is paid or given directly or indirectly for soliciting any person in this state; accord KRS 292.310. The term "commission," in turn "means any payment in cash, securities, or goods for offering or selling, promise, or commitment to provide payment in the future for offering or selling, or any other similar payment." MCL 451.801(e).

The Court has already found that a material question of fact exists as to whether the securities at issue were "covered." There is also a question of fact as to whether Underwood or Flewallen were "agents." Flewallen testified that "[c]ash bonuses were paid to OTR salespeople, including myself, when sales of the securities were made." Underwood, however, testified that "Mr. Flewallen was not given any commission or payment of any kind to solicit Mr. Myers, or any other person, to purchase stock in OTR Media." In other words, Underwood testified that Flewallen's remuneration from OTR Media was not in any way affected by Myers' decision to purchase OTR Media stock. According to Underwood, "had Myers never purchased his stock, Flewallen would have received the same remuneration from OTR Media that he did." Underwood further testified that Flewallen was never

-11-

employed at OTR as a sales person and characterized Flewallen's relationship with OTR as that of an independent contractor. Similarly, Underwood contends that he himself never worked on a commission basis while at OTR and that OTR employed sales people who were registered to sell OTR securities and whose sole function was to sell OTR securities. Based on these differing accounts, the Court is unable to conclude for purposes of Plaintiff's summary judgment motion that the named Defendants acted as "agents." Thus, summary judgment as to Count II of Plaintiff's Complaint is **DENIED.**

### D. Material Misrepresentations

Finally, Plaintiff seeks summary judgment as to Count III of his Complaint based on Defendants' representation in the subscription agreement that the Securities do not need to be registered under the 1933 Act nor under any state securities laws. Based on our holding in Section B, a material question of fact exists as to this issue as well. Thus, summary judgment as to Count III of Plaintiff's Complaint is **DENIED.**

### IV. CONCLUSION

For the foregoing reasons, the motion for summary judgment by Plaintiff, Lyle G. Myers [DN 12] is **DENIED**. The motion to compel arbitration and cross-motion for summary judgment by Defendants, OTR Media Inc. et. al. [DN 20] is likewise **DENIED**.

cc: counsel of record
05cv-101Myers