**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION**

**CASE NO. 1:05-CV-101**

**LYLE G. MYERS**                                                                                           **PLAINTIFF**

**V.**

**OTR MEDIA, INC.,
RICHARD UNDERWOOD, and
CARL FLEWALLEN,
jointly and severally**                                                                                   **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon a motion for partial summary judgment by the Plaintiff. (DN 105). Fully briefed, this matter is ripe for consideration. For the following reasons, the Plaintiff's motion is **GRANTED**.

### I. FACTS

This case arises out of the sale of securities by Defendants, OTR Media, Inc. ("OTR"); Richard Underwood ("Underwood"), Chairperson of OTR; and Carl Flewallen ("Flewallen"), Senior Accounts Manager of OTR, to Plaintiff, Lyle G. Myers ("Myers"), a Michigan resident.

Myers is an elderly businessman who became a millionaire after discovering a type of grease that works particularly well with conveyor systems and was a regular investor in oil and gas ventures in the Bowling Green, Kentucky area. OTR, which has now ceased operations, was a mobile billboard company that planned to sell advertising space on semi-trailers. Both parties agree that Myers was targeted as a potential investor in OTR because of his wealth.

Myers first received a brochure advertising the OTR stock offering in the fall of 2002. Shortly thereafter, Myers was contacted by Defendant Flewallen regarding the stock offering. After several phone calls and even a personal visit from Defendant Underwood, Myers made three

investments in OTR: one for $5,000 on or about January 2, 2003; one for $295,000 on or about January 31, 2003; and one for $186,000 on or about July 4, 2003. On May 12, 2003, the Kentucky Department of Financial Institutions, Division of Securities, issued a Cease and Desist Order because they had determined that OTR had violated Kentucky law by selling unregistered securities using unregistered agents.

Myers has brought this action based on the Defendants' allegedly fraudulent sale of stock to Myers. In February 2005, before substantial discovery had been conducted, Myers filed a motion for summary judgment on the three state law claims he had brought against the Defendants: Count I (selling unregistered securities); Count II (selling securities using unregistered agents); and Count III (making material representations in the sale of securities). This Court denied that motion in its Memorandum Opinion and Order entered on August 30, 2005. (DN 44). However, discovery is now complete, and Myers again seeks summary judgment on Count II of the Complaint.

## II. LEGAL STANDARD

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories and affidavits, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying the portion of the record which demonstrates the absence of a genuine issue of material facts. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party themselves thereafter must produce specific facts demonstrating that a genuine issue of fact exists for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 586 (1986). The Rule requires the non-moving party to present "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The mere existence of scintilla of evidence in support of the [non-moving party's] position will be insufficient, there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477. U.S. at 252.

### III. ANALYSIS

In Count II of the Complaint, Myers claims that the Defendants violated § 201 of the Michigan Uniform Securities Act and § 292.333 of the Securities Act of Kentucky since they were not registered agents when they sold sock to Myers. Both the Michigan and Kentucky statutes prohibit an individual from transacting business in the state as an agent unless "registered." See, e.g., M.C.L. § 451.601(a); K.R.S. § 292.330(1). They also prohibit a broker-dealer or an issuer from employing an agent unless the agent is registered. M.C.L. § 451.601(b); K.R.S. § 292.330(1). Both statutes define "agent" as "any individual other than a broker-dealer who represents a broker-dealer or issuer in effecting or attempting to effect purchases or sales of securities." M.C.L. § 451.801( c); K.R.S. § 292.310(1). However, an individual is not an "agent" under the terms of the statute and is therefore not required to be "registered" if the individual "represents an issuer in effecting transactions in a covered security as defined in section 18(b)(3) or 18(b)(4)(D) of the Securities Act of 1933" and does not receive commission for those transactions. Id. [1,2]

---

[1] The Michigan statute provides: "'Agent' does not include an individual who represents an issuer in (1) effecting transactions in a security exempted by section 402(a)(1), (2), (3), (4), (5), (9), or (10), (2) effecting transactions exempted by section 402(b), (3) *effecting transactions in a covered security as defined in section 18(b)(3) or 18(b)(4)(D) of the securities act of 1933, 15 U.S.C. 77r*, or (4) effecting transactions with existing

3

Thus, according to Myers, he is entitled to judgment as a matter of law because the record clearly establishes that Defendant Flewallen transacted as an agent in both Michigan and Kentucky for OTR, without registering as an agent in either state, and received a commission based upon those transactions. The Defendants argue, however, that there is a genuine issue of material fact as to whether 1) Flewallen received commission for his sale of OTR stock; and 2) the Defendants were exempt from the registration requirements of both states because the OTR transactions involved "covered securities" under federal law. The Court will address each of these arguments in

---

employees, partners, officers, or directors of the issuer or any of its subsidiaries if, in connection with all of these 4 cases, *no commission is paid or given directly or indirectly for soliciting any person in this state*. "Agent" does not include an officer or general partner of an issuer whose securities are registered under the provisions of this act, who represents the issuer in effecting transactions in the registered securities, if no commission is paid or given directly or indirectly for soliciting any person in this state. "Agent" does not include a person acting solely as a finder and registered pursuant to this act or acting as a finder under a transaction exempt pursuant to section 402(b)(19). "Agent" does not include a person whose transactions in this state are limited to only those transactions set forth in section 15(h)(2) of the securities exchange act of 1934, 15 U.S.C. 78o. M.C.L. § 451.801(c)(emphasis added).

[2] The Kentucky statute similarly provides that the term "agent" does not include an individual who represents an issuer in:

"a. Effecting a transaction in a security exempted by subsection (1), (2), (3), (10), or (11) of KRS 292.400, or subsection (5), (9), or (12) thereof if no commission or other remuneration is received for the sale of such securities or effecting a transaction in a security exempted by KRS 292.400(15) even if commission or other remuneration is received for the sale of such security provided that the individual offers or sells no other security except securities exempted by KRS 292.400(15);

b. Effecting transactions exempted by KRS 292.410 unless otherwise required;

c. *Effecting transactions in a covered security under Section 18(b)(3) or 18(b)(4)(d) of the Securities Act of 1933 if no commission or other remuneration is paid or given directly or indirectly for soliciting any person in Kentucky*;

d. Effecting transactions with existing employees, partners, or directors of the issuer if no commission or other remuneration is paid or given directly or indirectly for soliciting any person in this state; or

e. Effecting other transactions if the individual primarily performs, or is intended primarily to perform upon completion of an offering of the issuer's own securities, substantial duties for or on behalf of the issuer otherwise than in connection with transactions in the issuer's own securities and the individual's compensation is not based, in whole or in part, upon the amount of purchases or sales of the issuer's own securities effected for the issuer." K.R.S. § 292.310(1)(a)(emphasis added)..

4

turn.

## A. The Definition of "Commission"

The Michigan statute defines "commission" as "any payment in cash, securities, or goods for offering or selling, promise, or commitment to provide payment in the future for offering or selling, or any other similar payment." M.C.L. § 451.801(e). Thus, under this statute, "commission" is broadly defined as any payment for offering or selling securities. And, although the Kentucky statute does not explicitly define "commission," the Court believes that Kentucky courts would apply a similar definition since the statutes are otherwise substantially similar.[3]

Here, the evidence establishes that Defendant Flewallen was paid for offering and selling OTR securities. In his deposition, Defendant Flewallen explained that his position as a senior account manager at OTR involved selling securities to capitalize OTR. When asked how he was paid for his work, Flewallen stated: "Much of the time I worked there, I worked on a salary...[but] [b]asically, we were paid on a sliding scale...[M]ainly we were paid a lot of bonuses for getting more cli – more people involved with the company...Or sometimes we were paid bonuses for the amount of capital that was brought in..."(DN 108, Attach. 1, Flewallen Dep., p. 38). Thus, although Flewallen also testified that he was not "strictly paid on commission" and that he was not necessarily paid more if he "sold more stock or brought in more investors," his testimony establishes that he was paid for offering and selling OTR securities. (Id., p. 38-39).

Accordingly, the Court concludes that there is no genuine issue of material facts as to

---

[3]Where a statute is plainly based on or intended to coordinate with legislation from another jurisdiction and its language is subject to more than one reasonable interpretation, a court may consider the construction of similar statutes by other courts." Brown v. Commonwealth, 40 S.W.3d 873, 876 (Ky. Ct. App. 1999)(citing Schmitt Furniture Company, Inc. v. Commonwealth of Kentucky Revenue Cabinet, Ky., 722 S.W.2d 889 (1987); Burke v. Stephenson, Ky., 305 S.W.2d 926 (1957); City of Owensboro v. Noffsinger, Ky., 280 S.W.2d 517 (1955); and City of Covington v. State Tax Commission, 257 Ky. 84, 77 S.W.2d 386 (1934)).

whether Defendant Flewallen received a "commission," as defined by state law, for selling OTR stock to the Plaintiff.

**B. "Covered Securities"**

The National Securities Markets Improvement Act of 1996 ("NSMIA"), which was codified in part at U.S.C. §§77r, was enacted " to preempt state 'Blue Sky' laws which required issuers to register many securities with state authorities prior to marketing in the state." Lander v. Hartford Life & Annuity Ins. Co., 251 F.3d 101, 108 (2nd Cir. 2001). The NSMIA "seeks to further advance the development of national securities markets and eliminate the costs and burdens of duplicative and unnecessary regulation by, as a general rule, designating the Federal government as the exclusive regulator of national offering of securities." Zuri-Invest AG v. Nutwest Fin. Inc., 177 F.Supp.2d 189, 192 (S.D.N.Y. 2001). Thus, under the NSMIA, there are certain instances in which the registering of a security is unnecessary. One such instance is when a security qualifies as a "covered security." 15 U.S.C. §77r(a)(1)(A). A "covered security" is defined as, among other things, a security involved in a "transaction that is exempt from registration...pursuant to...[SEC] rules or regulations issued under [§ 4(2) of the Securities Act of 1933]." 15 U.S.C. §77r(b)(4)(D).

In its Memorandum Opinion and Order entered on August 31, 2005, the Court concluded that there was a genuine issue of material fact as to whether the securities marketed by the Defendants were "covered securities," exempt from registration, pursuant to SEC Rule 506. (DN 44). The Defendants contend that because this issue of fact remains, there is also an issue of fact as to whether the Defendants were required to be registered agents under the Michigan and Kentucky securities statutes. However, this argument is unpersuasive since both statutes provide that even individuals who represent issuers in effecting transactions in a "covered security" under the NSMIA must be

6

registered in the state if they receive commissions in connection with those transactions.

Thus, the Court concludes as a matter of law, that the Defendants violated state law when they sold stock to Myers since Defendant Fleewallen was not a registered agent and received a commission for the sale of said stock.

## IV. CONCLUSION

For the foregoing reasons, the Plaintiff's motion for partial summary judgment is **GRANTED**.  **IT IS SO ORDERED**.

cc: Counsel of Record